UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Nancy Cook,

                              Plaintiff,

                                                                        02CV65A

                                                                        Report
                                                                        &
                    v.                                                  Recommendation


Hatch Associates,

                              Defendant.

_____

        Before the Court is a motion for summary judgment filed on behalf of the defendant

Hatch Associates ("Hatch"). (Docket No. 19).


## Background

        The plaintiff, Nancy Cook ("Cook"), brings this action alleging that she was

discriminated against by Hatch because of her gender and age.   It is undisputed that Cook was

hired by Hatch in June of 1992 as a Senior Draftsperson (Docket No. 27 at 1; Docket No. 19 at

2). Cook was promoted to the position of Designer in 1995. (Docket No. 27 at 2; (Docket No. 19

at 2).

        It appears that such titles are not necessarily determinative of the actual work being

performed at Hatch.  It appears undisputed that Hatch employees performing drafting and design

work were all referred to as "designers" and typically held a two-year Associates of Applied

Science degree in engineering, designing and drafting. (Docket No. 19 at 4).  According to

Hatch, a person hired directly out of school would usually begin their career at Hatch performing

1

drafting work and working up to performing design work based on experience and skill development. (Docket No. 19 at 4).

Cook received several awards in recognition of her drafting work and she routinely received excellent job performance reviews. (Docket No. 27 at 2; see also exhibits A-1 through A-5). Cook asserts that she expressed interest in receiving "design" work, as opposed to working exclusively in the drafting field.  Although Cook was given a few design assignments in her initial years at Hatch when Bill Leggitt was the Supervising Engineer of her department, she alleges that she was denied work in the "design" area because of her gender once Chris Zagotsis replaced Leggitt as the Supervising Engineer. (Affidavit of Nancy Cook attached as Exhibit A to Docket No. 27 ["Cook Affidavit"] at ¶ 14).

According to Cook, she repeatedly expressed her interest in design work to Zagostsis. Notwithstanding her expression of interest, Zagotsis allegedly assigned all meaningful design related tasks to Cook's male co-workers: Tom Schlosser, Joe Gotta, David Owery or Bill Brown. Cook contends that several of her male counterparts were assigned to long-term design projects and provided senior designers as mentors from whom they could learn and further develop their design skills. (Docket No. 27 at 3).   Cook claims that she repeatedly asked for such a mentoring opportunity but was denied.   Hatch maintains that the mentoring relationships were "completely informal" and arose out of the employees on the job work relationships. (Docket No. 20 at 11).

Cook also asserts that in 1999, she submitted a formal training request form to Mara Ballow, the Hatch employee in charge of maintaining such requests.  Cook alleges that Ballow informed her that her request was forwarded to Zagotsis, but that Zagotsis did not respond to the request. (Cook Deposition attached as Exhibit H to Docket No. 23 ["Cook Deposition"] at 128). Cook claims that Hatch possessed self-training tapes and CDs for design skills, but that her

2

requests to utilize these materials were denied.  Similarly, Cook states that her requests to take design training courses were also denied.  Instead, according to Cook, she was advised to take additional drafting courses.  Cook asserts that drafting courses were not recommended to her male counterparts.  (Cook Deposition at 128-29, 156, 171).  Cook claims that in 1999 she became aware that Tom Schlosser was encouraged to take a pump design course.  Cooks asserts that she had not been notified that the course was available. When she became aware of the course, according to Cook, she had to demand that Zagostsis permit her to attend. (Cook Deposition at 126).

Cook's employment with Hatch was terminated allegedly as part of a reduction in workforce in January 2001.  Cook asserts that she was the only female holding the position of Designer in her department at that time.  She asserts that she was also the oldest Designer and the one with the most seniority in that title. (Docket No. 27 at 15, see n. 1)

According to Cook, the basis of her age discrimination claim is based upon the fact that upon her termination her duties and responsibilities were redistributed to a younger woman in the department, Jewel Cederman.  Cook asserts that Cederman was provided design assignments and mentoring opportunities Cook was denied during her employment with Hatch.  Further, although Cook was terminated by Hatch as part of an alleged reduction in workforce in 2001, when work became too slow to support Cederman's position at Hatch, Hatch secured employment for her at one of its subsidiaries.

Hatch maintains that it did not discriminate against Cook based upon either her gender or her age.

## Discussion

**Cook's Title VII Gender Claim**

### Standard of Review

Summary judgment is appropriate where there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law.  See Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F. 2d 186, 188 (2nd Cir. 1992) citing Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  To prevail on its summary judgment motion, the moving party must show that "there is no genuine issue as to any material fact" and that it "is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, we "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir.2001).

In discrimination cases, the inquiry into whether the plaintiff's sex or race caused the conduct at issue often requires an assessment of individuals' motivations and state of mind, matters that call for a "sparing" use of the summary judgment device because of juries' special advantages over judges in this area. . Distasio v. Perkin Elmer Corp., 157 F.3d 55, 61 (2d Cir.1998); accord Gallagher v. Delaney, 139 F.3d 338, 342 (2d Cir.1998) (noting juries' possession of the "current real-life experience required in interpreting subtle sexual dynamics of the workplace based on nuances, subtle perceptions, and implicit communications").

Nonetheless, an employment discrimination plaintiff faced with a properly supported summary judgment motion must "do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). See Distasio, 157 F.3d at 61. She must come forth with evidence sufficient to allow a reasonable jury to find in her favor. See McCarthy v. New York City Technical College, 202

F.3d 161, 167 (2d Cir.2000).  In this regard, the non-moving party must, "demonstrate to the court the existence of a genuine issue of material fact." <u>Lendino v. Trans Union Credit Information</u>, Co., 970 F.2d 1110, 1112 (2nd Cir. 1992), citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).  A fact is material:

> when its resolution would "affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."

<u>General Electric Company v.  New York State Department of Labor</u>, 936 F.2d 1448, 1452 (2nd Cir. 1991), quoting <u>Anderson v.  Liberty Lobby, Inc</u>., 477 U.S. 242, 248 (1986).

Even where facts are disputed, in order to defeat summary judgment, the nonmoving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor. See <u>Anderson</u>, 477 U.S. at 248; <u>Scotto v. Almenas</u>, 143 F.3d 105, 114 (2d Cir.1998). Thus the "non-moving party may not rely on conclusory allegations or unsubstantiated speculation." <u>Byrnie v. Town of Cromwell, Bd. of Educ</u>. 243 F.3d 93, 101 (2d Cir. 2001). "The non-moving party must come forward with enough evidence to support a jury verdict ... and the ... motion will not be defeated merely ... on the basis of conjecture or surmise." <u>Trans Sport</u>, supra, 964 F.2d at 188. Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." <u>Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Systems, Inc.</u>, 235 F.3d 53 (2nd Cir. 2000) quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

**Title VII Shifting Burdens**

Under the burden-shifting analysis outlined in <u>McDonnell Douglas Corp. v. Green</u>, 411

U.S. 792 (1973), a plaintiff first must establish a *prima facie* case of discrimination based on

race. See <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981);

<u>McDonnell Douglas</u>, 411 U.S. at 802. If he does so, the burden shifts to the employer to

articulate a legitimate, non-discriminatory reason for the employee's dismissal. <u>McDonnell</u>

<u>Douglas</u>, 411 U.S. at 802.  If the defendant proffers such a reason, the presumption of

discrimination created by the prima facie case drops out of the analysis, and the defendant "will

be entitled to summary judgment ... unless the plaintiff can point to evidence that reasonably

supports a finding of prohibited discrimination." <u>James v. N.Y. Racing Ass'n</u>, 233 F.3d 149, 154

(2d Cir.2000) citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 519-524 (1993); see also

<u>McDonnell Douglas</u>, 411 U.S. at 804; <u>Fisher v. Vassar College</u>, 114 F.3d 1332, 1336 (2d

Cir.1997) (en banc), *cert. denied*, 522 U.S. 1075 (1997). The  plaintiff "must be afforded the

opportunity to prove by a preponderance of the  evidence that the legitimate reasons offered by

the defendant were not its true reasons but were a pretext for discrimination."  <u>Reeves v.</u>

<u>Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 142-43 (2000).


**Prima Facie Case**

To establish a *prima facie* case of gender discrimination, the plaintiff must satisfy the

following four elements: (1) that plaintiff falls within the protected group, (2) that plaintiff was

qualified for the position, (3) that plaintiff was subject to an adverse employment decision and

(4) that the adverse employment decision was made under circumstances giving rise to an

inference of unlawful discrimination.  <u>McDonnell Douglas</u>, 411 U.S.  at 802 ; <u>Fisher</u>, 114 F.3d at

1335.

There is no dispute that Cook has met the first element, that as a woman she is a member

of a protected class.  There does not appear to be any dispute that Cook was qualified for the

Designer position she held. Hatch has conceded that it uses the "designer" title broadly and that

designers were asked to do both drafting and design work.  (Docket No. 19 at 4).  The

unchallenged evidence in the record reflects that Cook received excellent performance reviews

for her drafting work at Hatch.

As to the third element, an adverse employment decision, Cook asserts that she was

denied  assignments and training in the design area because of her gender.  According to the

plaintiff, this constitutes an adverse employment action because it deprived her of  the benefits

and responsibilities that should have flowed from her title as Designer.   A person with

developed skills in both the drafting and design areas would likely be more valuable, and hence,

would have additional job security.  The failure to provide a qualified female Designer the

opportunity to develop those design skills, while affording her male counterparts in that title the

opportunity to develop those very skills (enhancing their value as an employee, providing them

with more job security and promotion opportunities) constitutes an adverse employment decision

under Title VII.

Finally, Cook has established, for *prima facie* purposes, that the adverse employment

action was made under circumstances that may give rise to an inference of unlawful

discrimination.  Cook's performance evaluations reflect that she was the "best CAD worker in

the [Buffalo] office" [June 1999] and that she was equally familiar with "3D and AutoCAD" and

"one of the better operators" [December 1998]. Another evaluation concluded that Cook "is one of the best CAD operators on staff.  Her work is done quickly and accurately. [She] offers solutions in setting up drawing packages" [June 1999].  In what appears to be one of her last evaluations, it is noted that Cook "has the ability to produce one of the best CAD generated products in our office" and that she "is a good team member and an asset to a project team. [She] has the ability to be more involved than she presently is" [October 2000].  ((Docket No. 27 at Exhibit A-3).  However, at least two of Cook's performance evaluations concluded that she "needs exposure to design/layout" and that she "could use more time in a lead designer role for [mechanical] on small projects and as CAD coordinator."  Id.  Thus, the Career Development Forms attached as Exhibit A-4 to Docket No. 27, consistently reflect Cook's desire to "work on longer term project with senior person to further develop design capabilities" and that she wanted to get "more involved in design review meetings" and  "shy away from being just a 3D modeler," [October 2000].  Other Career Development Forms reflect similar desires for training in "mechanical design" [June 1999]; that her goal was to "get more involved in actual mechanical design function" [December 1997].  The record reflects that Cook has consistently sought opportunities to develop her design skills. Cook's May 1993 Career Development Form – prepared less than one year from her start at Hatch –  acknowledged that Cook was technically competent and that her "technical abilities [were] developing based on work assigned."  That same form further acknowledged her  goal to "develop design abilities" concluding in this regard that she "needs opportunity to apply skills learned in school."  (Exhibit A-4 attached to Docket No. 27).

Notwithstanding her consistent stated desire to develop her design skills over her more than eight-year employment with Hatch, Cook asserts that those opportunities were instead given to her male counterparts.  Hatch does not appear to dispute that the male Designers in the same department as Cook, *all of whom had less seniority than Cook*,  were presented with more design-related opportunities than Cook.  Instead, Hatch contends that Cook "got the 3-D assignments because of her 3-D skills" and that she was "apparently content with doing 3-D modeling work for a long period before [Zagotsis] became her supervisor [because] prior to that she never complained about working on 3-D models." (Docket No. 20 at 16).  Hatch argues that the fact that Cook did not complain about being limited to 3-D work until Zagotsis became her supervisor "belies" her claim that Zagotsis discriminated against her due to her gender or age. This argument is not persuasive.  Cook contends that Zagotsis' predecessor's were more supportive of Cook and provided more design related opportunities.  The fact that Cook did not "complain" prior to Zagotsis becoming her supervisor may also relate to the fact that these were her first years with the company, or that she was trying to be a good team player (as reflected in various performance evaluations and Career Development Forms cited above).  Moreover, the defendant's assertion that Cook was content at being restricted to doing drafting work is belied by the consistent documentary record which reflects that her desire to obtain more design work was present almost from the start of her employment with Hatch.   In the face of that record, the fact that Zagotsis gave the male employees in Cook's title those design related opportunities, while Cook was denied them, may give rise to an inference of unlawful discrimination.

Under these circumstances, the plaintiff has met her burden to establish a *prima facie* case.

9

The Court notes that the plaintiff has alleged wrongful termination as well as the failure to afford training opportunities as the basis of her Title VII claim.  The plaintiff has argued that the failure to afford her training and work assignments in the design area contributed to her termination in the reduction in workforce.  The record provides some support for this argument. Indeed, in justifying Cook's termination Hatch states that "as of the plaintiff's termination there was no longer any paying 3-D modeling work in the office and there was no prospect of any materializing in the near future." (Docket No. 20 at 19). Hatch goes on to state that of the design work available, Zagotsis determined that Cook's male counterparts, although with less seniority, were better qualified in terms of "their skills and experience." (Docket No. 20 at 19).   The plaintiff argues that this perception is based upon the fact that her male counterparts had been given opportunities to develop their design skills over the preceding several years and that she was not despite her documented requests for design training and work.  A question of fact exists in this regard.

Questions of fact also exist as to the plaintiff's failure to train claims.  Hatch argues that the company never denied any request by Cook to attend any specific training class. (Docket No. 20 at 17). Cook asserts that she was only invited to attend 3-D modeling classes, which her male counterparts were not asked to attend. Cook contends that her male counterparts attended more design classes than she.  In addition, Cook alleges that her male counterparts were afforded other training opportunities such as in-house tapes on design skills, as well as on-the-job training by virtue of being assigned design work and being mentored on long-term projects with Senior

Designers.[1]   Again, these questions of fact may relate to arguments as to why, at the time of the reduction in force,  Cook's male counterparts possessed more developed design skills than Cook.

In sum, although this case lacks a "smoking gun" pointing to the inner motivations of Zagotsis in making work assignments, based upon the record in this case a jury could reasonably find that a discriminatory animus existed with respect to the disparate work assignments provided to Cook and her male counterparts, and the denial of Cook's requests, like those contained in the Career Development Forms, for similar training and work assignments in the design area.

### Non-Discriminatory Basis for Conduct

Hatch asserts that it has offered a legitimate, non-discriminatory reason for its actions. As discussed above, Hatch asserts that Cook was given primarily drafting assignments because she was very good at drafting work.  As reflected in the various performance review and Career Development Forms, competence in design work is viewed as an important characteristic in a person occupying a "Designer" title.  It also appears to have been necessary for possible

---

[1]   Hatch contends that the mentoring program was an informal program that was not implemented in the plaintiff's department. (Docket No. 20 at 11). At oral argument, the defendants asserted that there really was no mentoring program and that what is being referred to as a mentoring program are just the relationships which developed between co-workers.  However the record includes a February 1995 memo which discusses the mentoring program and outlines a process to revitalize its implementation.  Although it appears that the implementation of the mentoring program was uneven throughout Hatch's operations, it may be argued based upon the evidence that the mentoring program was more than just an informal relationship between two co-workers.   The record also includes an internal memo dated June 26, 2000 reflects that as of that date some members of Cook's department, notably two of the  three male counterparts holding a Designer title,  Joe Gotta and Tom Schlosser,  – both with less seniority than Cook –  had been involved in the program for some time period. (Docket No. 22, Exhibit E). The import of this disparity is a question for the trier of fact in this case.

promotion.  That fact that Cook was very good in her drafting work, does not warrant denying

her the opportunities in the design area which would enhance her value, job security and

promotional opportunities with Hatch.  This record does not establish that males in her title could

not perform drafting assignments as competently as Cook.  In any event, the fact that a female

employee may perform a specific task in an exceptional manner does not warrant restricting that

female employee to a limited role which affords less job security and negatively impacts

promotional opportunities, while affording male employees *in that same title* the opportunity to

broaden and enhance their skills and promotional opportunities.   This is not a legitimate,  non-

discriminatory basis for the alleged disparity in work assignments.


**The Promotion Claim**

Cook's Title VII claim is based upon several allegations of discriminatory conduct.  In

addition to discriminatory conduct in the assignment of work and training opportunities

discussed above, the Complaint asserts that the Title VII claim is also based upon a failure to

promote  (Docket No. 1 at ¶ 20).[2]

Relying on Brown v. Coach Stores, Inc., 163 F.3d. 706 (2d Cir 1998), Hatch argues that

this claim must fail inasmuch as the plaintiff cannot establish that she applied for any specific

promotion or that such a promotion existed.  The plaintiff's papers in response to the instant

motion do not address or oppose this specific argument.

---

[2]      Hatch's assertion that Cook cannot establish a prima facie claim under Title VII
because she did not apply for a promotion is misplaced. (Docket No. 20 at 5).  This is only one form
of discriminatory conduct alleged by Cook as the basis of her Title VII claim.

To the extent the plaintiff's Complaint asserts a Title VII claim based upon the failure to promote, it should be dismissed.


**Age Discrimination Claim under ADEA**

The plaintiff also alleges that she was discriminated against based upon her age.  To maintain an Age Discrimination in Employment Act ["ADEA"] claim, the plaintiff must establish that (1) she was a member of a protected class; (2) that she was satisfactorily performing her duties or was qualified for the position; (3) there was an adverse employment action and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  Woroski v. Nashua Corp., 131 F.3d. 105, 108 (2d. Cir. 1994).

It is undisputed that the plaintiff was over the age of 40 at the time in question, and thus, a member of a class protected under the ADEA.  The second and third elements may fairly be met by the discussion relating to the corresponding elements of the Title VII claim.  However, the plaintiff has failed to establish that the adverse employment conduct in this case occurred under circumstances which give rise to an inference of discrimination based upon age. The only evidence of age discrimination alleged in the record is the fact that, upon her termination, some of the plaintiff's job duties and responsibilities were transferred to Jewel Cederman who was 32 years of age at the time and was provided a job at a Hatch affiliate. (Docket No. 27 at 4).  Unlike the case with respect to Cook's Title VII claim, the plaintiff offers no other evidence of discriminatory animus to support her ADEA claim.  Moreover, the plaintiff's response does not address this portion of the defendant's motion.

13

It is recommended that the motion for summary judgment be granted to the extent it seeks to dismiss plaintiff's claim under the ADEA.


**Equal Pay Act Claim**

Although asserted as a claim in the complaint, the plaintiff has offered no evidence in support of a claim under the Equal Pay Act.  The defendant's instant motion seeks summary judgment with respect to this claim.  The plaintiff has not responded to this portion of the defendant's motion.

In light of the above and the record in this case, it is recommended that the motion for summary judgment be granted to the extent it seeks to dismiss the plaintiff's Equal Pay Act claim.


**Conclusion**

Based on the forgoing, it is recommended that the instant motion for summary judgment (Docket No. 19) be:

1.      Granted to the extent that it seeks to dismiss the plaintiff's Title VII claim based upon a failure to promote;

2.      Denied to the extent it otherwise sought to dismiss the plaintiff's Title VII claim;

3.      Granted to the extent it seeks to dismiss the plaintiff's ADEA claim; and

4.      Granted to the extent it seeks to dismiss the plaintiff's Equal Pay Act claim.

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as WDNY Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME,  OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and WDNY Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to WDNY Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal

authority."  **Failure to comply with the provisions of Rule 72.3(a)(3)may result in the District Court's refusal to consider the objection.**

So ordered.

s/Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
March 19, 2004