UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

NANCY COOK,

                              Plaintiff,

    v.                                          DECISION AND ORDER
                                                    02-CV-65A

HATCH ASSOCIATES,

                              Defendant.

---

## INTRODUCTION

Plaintiff alleges that the defendant, her former employer Hatch Associates[1] ("Hatch" or "defendant"), discriminated against her in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Equal Pay Act, 29 U.S.C. § 206 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by denying her work assignments, training, mentoring, promotion opportunities, and ultimately by terminating her

---

[1] Hatch Associates Consultants, Inc., sued herein as "Hatch Associates" is a "Canadian-based engineering consulting company concentrating in the mining and metals processing industries, such as steel, nickel, copper and others. Hatch provides consulting engineering services in the following areas: (a) mechanical; (b) civil/structural; (c) process; (d) electrical; and (e) environmental." See Declaration of Chris Zagotsis at ¶ 3.

1

employment because of her gender and age.  Pending is defendant's motion for summary judgment on all of plaintiff's claims.

## **BACKGROUND**

Plaintiff worked in Hatch's Buffalo office as a designer in the mechanical department from 1992 to 2001.  Plaintiff was the only female employee within the designer classification for the mechanical department.[2]  The remainder of the designers in the mechanical department were male.  It is undisputed that the duties of a designer included both drafting and design work.  Plaintiff is particularly adept at a type of computer assisted drafting called 3D (three-dimensional) Modeling, and performed most of the 3D Modeling in Hatch's Buffalo office.  According to plaintiff, the male designers in the mechanical department performed the more desirable design work and were routinely provided more design opportunities than plaintiff, who was routinely assigned the 3D Modeling work despite her requests for design work.[3]  Plaintiff alleges that the male designers were also provided with training for design work and with mentors who assisted them in developing their design skills, and that

---

[2]  There was a female intermediate designer in the mechanical department.

[3]  Plaintiff contends that she was more qualified for design work than the other designers in her department because most of them attended the same two-year degree program and she believed that she obtained better grades than the other designers, she was hard-working, conscientious, "didn't goof off" and had been there longer than "any of those people."  See Plaintiff's Deposition at 58, 62.

she was not provided with training or a mentor. Plaintiff contends that when the Buffalo office suffered a decrease in work in 2001, the male designers retained their employment while she was terminated.

On May 22, 2003, defendant filed a motion for summary judgment on all of plaintiff's claims. On March 19, 2004, Magistrate Judge Hugh B. Scott issued a Report and Recommendation in which he concluded that defendant's motion for summary judgment should be granted in part and denied in part. He recommended that plaintiff's equal pay and age discrimination claims should be dismissed because plaintiff failed to show a *prima facie* case of discrimination. The Magistrate Judge reached the same conclusion with respect to plaintiff's claim for gender discrimination based on the failure to promote. Plaintiff does not object to these recommendations and they are adopted.

The Magistrate Judge further recommended that defendant's motion for summary judgment should be denied with respect to plaintiff's gender discrimination claims alleging failure to train and mentor, failure to provide work opportunities and termination on the basis of gender. The Magistrate Judge concluded that plaintiff had demonstrated a *prima facie* case of gender discrimination and that defendant failed to articulate a legitimate, non-discriminatory reason for its actions. Defendants object to these conclusions. The Court heard oral argument on the objections on August 4, 2004 and March 10, 2005.

## **DISCUSSION**

The district court reviews de novo the portions of a Report and Recommendation to which objections have been filed. See 28 U.S.C. § 636(b)(1)(A). If a party fails to object to a portion of a Report and Recommendation, further review is generally precluded. See Mario v. P&C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir. 2002) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)). Upon de novo review of the Report and Recommendation, and after reviewing the submissions and hearing argument from the parties, the Court adopts in part and rejects in part the conclusions of the Report and Recommendation.

The sufficiency of plaintiff's claims is analyzed using the three step burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and its progeny. First, plaintiff must demonstrate a *prima facie* case of employment discrimination. This is generally satisfied by a showing that (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for the position; (3) she suffered some adverse employment action; (4) under circumstances giving rise to an inference of unlawful discrimination. If she does so, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). If the defendant articulates such a reason, the burden shifts back to the plaintiff to show, or at this stage raise an issue of

fact, that the defendant's proffered reason is not the true reason for its actions and is merely a pretext for discrimination. Id. at 253. On a motion for summary judgment, a plaintiff need only provide "sufficient admissible evidence from which a rational finder of fact could infer that more likely than not she was the victim of intentional discrimination." Bickerstaff v. Vassar College, 196 F.3d 435, 447 (2d Cir. 1999).

A. Failure to Assign Design Work

      Hatch concedes, for purposes of this motion, that plaintiff can establish a *prima facie* case of discriminatory work assignments. However, Hatch objects to the Magistrate Judge's conclusion that it failed to proffer a legitimate non-discriminatory reason for its failure to assign design work to plaintiff. The Magistrate Judge concluded that defendant failed to articulate a legitimate, non-discriminatory reason for not assigning design work to plaintiff because "the fact that a female employee may perform a specific task in an exceptional manner does not warrant restricting that female employee to a limited role which affords less job security and negatively impacts promotional opportunities . . . ." See Report and Recommendation at 12.

      Hatch maintains that plaintiff's supervisor, Chris Zagotsis, who was the lead mechanical engineer, did not assign design work to plaintiff because he determined that her design skills were "average to below average," while her 3D

5

Modeling skills were superior. Hatch contends that Zagotsis' failure to assign design work to plaintiff because of her inferior skill is a legitimate exercise of business judgment, and thus is a legitimate, non-discriminatory reason for its actions. Hatch also argues that, as plaintiff has submitted no evidence that this reason is a pretext for discrimination, its motion for summary judgment should be granted.

In order to meet its burden on a motion for summary judgment, a defendant "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Burdine, 450 U.S. at 257. The defendant's burden is one of production, not persuasion, and therefore it "can involve no credibility assessment." See Reeves v. Sanderson Plumbing Products, 530 U.S. 133, 142 (2001) (internal citation omitted). A defendant's exercise of business judgment is commonly accepted as a legitimate, non-discriminatory reason for taking an employment action. See Montana v. First Fed. Savings & Loan Assoc., 869 F.2d 100 (2d Cir. 1989). Defendant has satisfied its burden of articulating a legitimate non-discriminatory reason for its actions.

The Court also concludes that plaintiff has raised genuine issues of material fact as to whether Hatch's articulated reason is a pretext for gender discrimination. In his declaration in support of Hatch's motion for summary judgment, Zagotsis stated that his responsibility was to assign employees to

projects based on the needs of the project and the skills of available employees. See Zagotsis Declaration at ¶ 23. The specific work assignments were made by the individual project manager. Id. Zagotsis further stated that it was the employee's responsibility to request certain work from the project manager. Id. Yet, he admitted that when acting as a project manager himself, he assigned work based on availability and skills and did not consider employee preference. Id. at ¶ 25. Finally, Zagotsis stated that he assessed plaintiff's design skill as "average to below average" and as a result, assigned her limited design work commensurate with his assessment of her skill. See Zagotsis Declaration at ¶ 24.

In response, plaintiff points to her annual performance reviews which, in addition to assessing her performance over the past year, contain a section for assessment of plaintiff's goals over the coming year. See Zagotsis Declaration, Exhibit C. On her performance review for 1997, which was completed by Chris Zagotsis, plaintiff's work performance is rated very favorably. Listed as a goal on that evaluation is for plaintiff to be more "proactive" and "seek out" design work. Id. Moreover, it states that "CZ is to look for such work and assign to NC." Id. Subsequent annual evaluations also list increased design work as a goal for plaintiff to strive to meet over the year. None of the performance evaluations indicate that plaintiff had performed any work, much

less design work, unsatisfactorily or that her design skills were considered merely "average to below average."

Hatch's continued encouragement of plaintiff to seek design work, the absence of any indication that plaintiff's limited design work was unsatisfactory, and plaintiff's consistently positive performance evaluations are sufficient to raise an issue of material fact as to whether Hatch's stated reason for failing to assign design work to plaintiff is a pretext for intentional gender discrimination.

Therefore, defendant's objection is denied as to the claim for discriminatory work assignment.

B. Failure to Train

Defendant objects to the denial of summary judgment on this claim and asserts that plaintiff failed to make out a *prima facie* case of discrimination based on the failure to train because she was never denied any design training opportunity.  In her response to the defendant's objections, plaintiff asserts that "as a designer, plaintiff was entitled to participate in the same design training course and to utilize the same self-training materials as the male employees holding the same title."  Plaintiff's Response at 5.

Plaintiff has failed to raise an issue of fact as to whether she was denied any training that was available to male employees.  Plaintiff has provided

no evidence of any specific training course or opportunity which was available to the male designers but was not available to her.  When she requested that she be allowed to attend a design class which was being attended by a male designer, she was permitted to do so.  Her complaint that defendant failed to schedule a design class for the Buffalo office does not show discriminatory treatment, because all employees of the Buffalo office, male and female, were equally deprived of the opportunity to take the class in Buffalo.  Plaintiff does not dispute that she could have taken the class in the Mississauga, Ontario office, but contends only that when she asked Zagotsis about the class he reiterated that he was attempting to have the class taught in Buffalo.  See Plaintiff's Deposition at 130-32.  Plaintiff never sought to take the class in Mississauga and thus could not know whether her request would have been approved.  Id. at 131.  Plaintiff admitted that she never had a request for training denied and she provides no evidence of other training courses which were available to the male designers and not to her.  Id. at 136-38.

Similarly, plaintiff has provided no evidence that self-training materials were available to the male designers and not to her.  Plaintiff testified at her deposition that the self-study materials were never available when she requested them, (Plaintiff's Deposition at 128-29), but she has produced no evidence that the materials were made available to the male designers.  There

9

is no evidence that plaintiff was denied design training because of her gender.[4] Defendant's objection on this ground is granted and plaintiff's claim for intentional gender discrimination based on a failure to provide training is dismissed.

C. <u>Failure to Mentor</u>

Defendant also objects to the Magistrate Judge's conclusion that issues of fact exist as to whether plaintiff was denied mentoring based on her gender. Hatch argues that it had no official mentoring program and that Hatch did not create the informal mentoring relationships that existed between certain employees. Plaintiff points to a 1995 memorandum indicating that Hatch wanted to revive its mentoring program as evidence that such a program existed. Plaintiff asserts that she requested that she be assigned a mentor and that Hatch and Zagotsis failed to provide her with a mentor. Plaintiff alleges that the male designers developed mentoring relationships as a result of the design work they were assigned, and that her lack of design work precluded her from developing these types of relationships.

---

[4] In an effort to show the disparity in training between herself and the male designers, plaintiff argues that, in addition to the males receiving design training while she was not, conversely, she was offered computer drafting training but the male designers were not. Plaintiff has likewise submitted no evidence demonstrating that the male designers were not offered computer drafting training, other than her own deposition testimony which is insufficient because she lacks personal knowledge of what was offered to the male designers.

In recommending the denial of defendant's summary judgment motion, the Magistrate Judge relied on two memoranda, one from 1995 and one from 2000, and concluded that such memoranda created a genuine issue of material fact as to the existence and extent of a mentoring program at Hatch, and whether plaintiff was denied participation in that program.  The 1995 memorandum states that Hatch wanted to revive its mentoring program.  It sought employee input with respect to interest and the names of persons currently serving as mentors and the names of persons by whom the employees would like to be mentored.

The 2000 memorandum consists of the minutes of a meeting attended by five Hatch employees and notations from telephone conversations with some employees involved in mentoring relationships.  The minutes indicate that the purpose of the meeting was to discuss a revitalization of a mentoring program.  The meeting participants noted that the sum total of Hatch's efforts to that time was the memorandum written in 1995.  The participants discussed the work relationships between certain Hatch employees as typifying a mentoring relationship.  Two of the male designers from the mechanical department were mentioned as participants in mentoring relationships.  Two other male designers and plaintiff were not mentioned.  The minutes indicate that a formal mentoring system was perceived to be impractical as opposed to an informal system.  At the end of the minutes, suggestions were made as to how an informal mentoring

system could function (i.e., assign a new employee to an experienced employee for a period of six months with the hope that a working relationship could develop).

Other than plaintiff's lack of design work, there is no evidence that defendant prevented plaintiff from developing a mentoring relationship with others at Hatch. There is no evidence that defendant fostered mentoring relationships on behalf of male designers. Two male designers, like plaintiff, were not perceived as having a mentor. There is no evidence that any employee, male or female, was assigned a mentor after requesting one. Therefore, there is no evidence that Hatch denied plaintiff a mentor, while providing male designers with mentors.[5] Defendant's objection is granted and plaintiff's claim for gender discrimination based on the failure to provide a mentor is dismissed.

D. <u>Unlawful Termination</u>

Hatch objects to the denial of summary judgment in its favor on plaintiff's claim of unlawful termination. Plaintiff has established a *prima facie* case of discrimination. She was terminated, while other male designers retained

---

[5] Additionally, at her deposition, plaintiff testified that when she asked questions of or sought the assistance of more experienced personnel at Hatch, she was provided the assistance she sought. She indicated, however, that sometimes the responses she received were not as thorough or detailed as she would have preferred and that she "expected much more a lot of the time." <u>See</u> Plaintiff's Deposition at 86.

their employment.[6]  Defendant contends that due to a decrease in available 3D Modeling work, Zagotsis made the decision to terminate plaintiff's employment rather than the employment of other male designers, because plaintiff primarily did 3D Modeling work and did not have as much design experience as the male designers.  Defendant claims this was a business judgment, not based on gender, and that plaintiff cannot show that this reason is a pretext for discrimination.  The Magistrate Judge concluded that this claim raises an issue of fact because plaintiff alleges that the failure to assign her design work resulted in her inexperience in design on which basis she was terminated.

As discussed earlier, the exercise of business judgment is a legitimate, non-discriminatory reason for an employer's action, but plaintiff has provided evidence from which a jury could conclude that such proffered reason was a pretext for gender discrimination.  Defendant's objection is therefore denied.

## **CONCLUSION**

For the reasons stated, the Magistrate Judge's Report and Recommendation is adopted in part and rejected in part.  Defendant's motion for

---

[6] Defendant contends that plaintiff's termination did not occur under circumstances giving rise to an inference of discrimination because a male employee in the intermediate designer position was terminated at the same time as plaintiff.  Since that male employee was an intermediate designer, not a designer, he was not similarly situated to plaintiff and his termination does not dispel the inference of discrimination that arises from plaintiff's termination.

summary judgment is granted with respect to plaintiff's claims for discriminatory failure to train and failure to provide a mentor.  Plaintiff failed to demonstrate that she was treated differently from similarly situated male employees.  Defendant's motion is denied, and the case will proceed to trial, with respect to plaintiff's claims for discriminatory work assignments and termination.

The parties shall appear for a meeting to set a trial date on Wednesday, August 17, 2005 at 9:00 am.

IT IS SO ORDERED.

/s/ Richard J. Arcara
_____
HONORABLE RICHARD J. ARCARA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

Dated: August   3  , 2005